Bayer v. Cockerill.

All the justices concurring.

AUGUST W. BAYER v. CLINTON COCKERILL.

*Error from Leavenworth County.*

Where on March 19th, 1857, C. & F., the owners, conveyed respectively, parts of the land in question to Clarkson, as trustee for Mrs. Tabitha C. Hughes, she being at the time a married woman, the wife of Thomas C. Hughes, *held* that under the law of 1855, then in force, it was not necessary that the deed should contain the words "trustee for the use and benefit of" her, in order that her husband might be excluded from any interest in the property. Whatever would evidence the intent of the grantor to have been that the conveyance should be for her sole use and benefit, would be sufficient.

The deed, designating Clarkson as the trustee of Mrs. H., and the covenants being with him in that capacity, as to the trustee, the title vests in Mrs. H.

Where the evidence in such case does not show the source of the consideration, nor that the husband of the beneficiary was ever in possession of the consideration, and where the recitals in the deed show that the consideration was paid by the trustee, it cannot be presumed that there was such possession of the consideration on the part of the husband, as would by the common law, make the conveyance inure to his benefit, and *held* that the deed to Clarkson as trustee in this case, vested the title solely and absolutely in Mrs. Hughes.

*Semble*, had it been shown that the consideration was money or other personal property, and in the wife's possession, her possession might have been regarded as his; or had it been *shown* to be a *chose in action* and he shown to have exercised acts of ownership over them, such a reducing to possession as the law makes necessary to vest the title in him, might have been inferred, and thus operated to vest the ownership in him.

In such case, the record showing that the trustee Clarkson, conveyed to Todd, the body of the deed purporting to be by him, as trustee for Mrs. Hughes, but it being signed by him individually, *held* that whatever title, interest or claim, legal or equitable, Clarkson (the trustee) had, passed to his grantee, Todd.

In such case, the record showing that Hughes, as agent of his wife, by verbal appointment, sold the property in question to Clarkson, who paid the purchase money, which inured to the benefit of Mrs. Hughes, and was put in and took possession, and while so in possession made valuable improvements thereon, in all of which Mrs. H. acquiesced, *held* that Clarkson having thus acquired the equitable title, was entitled to the legal title, so far as he and Mrs. Hughes are concerned, and this, notwithstanding the statute of 1857, [Laws '57, p. 1.]

*Semble*, although this court might have come to a different conclusion on the evidence as to the facts, yet the finding for that reason alone ought not to be disturbed, there having been evidence tending to show the state of facts necessary to support the decision.

Where the record in such case shows that Mrs. Hughes conveyed to plaintiff in error, June 2d, 1863, by quitclaim deed, "remising, releasing and quitclaiming" the property without other covenants, *held* that she thereby conveyed the title she held, viz: the legal title, subject to the equitable title which had passed to Todd and mortgaged by him to defendant in error; *Held* that the court below was warranted, under the evidence, in finding that plaintiff in error, took with notice of the equitable claims of defendant in error, and did so find, in finding that the lien of the defendant in error under his mortgage, was prior to all other claims; the service of summons by publication having been completed April 6th, 1863, no person, under section 87 of the Civil Code, could acquire an interest in the real estate against defendant in error, after that.

The following statement of the facts of the case, is taken from the opinion of the court :

On the 19th of March, 1857, Jeremiah Clark being the owner thereof, conveyed to James J. Clarkson, as trustee for Tabitha Hughes, the south half of lots 27, 28, 29, in block 95, in the city of Leavenworth. On the 30th day of the same month, Samuel F. Few, being the owner thereof,

by a like deed, conveyed to Clarkson the south half of lots 30, 31 and 32, in the same block. On the 12th day of May, 1858, Clarkson conveyed the south half of all these lots to Jarrett Todd. This deed, in body of it, purports to have been made by Clarkson as trustee for Mrs. Hughes, but it is signed by him in his individual capacity, April 16th, 1860. Todd mortgaged the property to Cockerill, the defendant in error, to secure a note for $1,000, dated November 20th, 1857, payable to Cockerill in twelve months, with interest from maturity at twenty-five per cent per annum, and signed by Clarkson, Todd and A. J. Isacks.

All these conveyances, immediately after they were made, were recorded in the proper office. On the second day of June 1863, Mrs. Hughes by deed of quitclaim, conveyed the property to Bayer, the plaintiff in error. On the 13th day of February, A. D. 1863, Cockerill commenced suit to foreclose his mortgage, and the amended petition in which case alleged that before the conveyance by Clarkson to Todd, Mrs. Hughes had sold the property to Clarkson; that he went into possession and made valuable improvements; that soon after the conveyance to Todd, he went into possession and so remained in possession, by his tenant, until forcibly ejected by Bayer. Bayer having been made a party on the 12th of October, 1863, filed an answer, denying the allegations of the petition, and setting up his title. To this Cockerill filed a general reply. The cause was submitted to the court for trial, without the intervention of a jury. The plaintiff below, having read in evidence the note, mortgage and deed from Clark, Few and Clarkson read a deposition of Brice W. Vineyard, who testified that in the spring of 1857, John W. Vineyard, as agent of Nancy R. Lyon, sold to Thomas C. Hughes, as agent for his wife, Tabitha C. Hughes, a tract of land in Anderson county, Missouri, containing eighty acres, for eight hundred dollars, in payment

whereof Mrs. Hughes drew a draft on Clarkson June 10th, 1857, due January 10th, 1858, accepted by Clarkson, July 25th, 1857, which was protested for non-payment when due; that said draft came into the hands of witness, as agent of Mrs. Lyon; that Clarkson gave witness to understand that he would get Todd to pay the draft in consideration of a mortgage or deed for the property in controversy, which he said he had purchased of Mrs. Hughes; that at the time of the purchase by Clarkson from Mrs. H., she was a boarder at witness's house in Missouri; that she frequently spoke of the sale of all her property in Leavenworth city, to Clarkson; that she said to witness the draft was for the purchase money of the property in controversy; witness further said that the draft was paid to him in full by Todd in the summer of 1859, and that he, witness, knew it was for the purchase money of the lots in controversy. The draft was left with witness and lost. Thomas C. Hughes, husband of Tabitha C., testified that in the spring of 1851, as the agent of his wife, he bought of J. W. Vineyard, as trustee for Mrs. Lyon, eighty acres of land in Missouri, and paid for it with a draft of Mrs. H. on Clarkson for eight hundred dollars, which draft was accepted by Clarkson; that the deed for the land was made to Clarkson, as trustee for Mrs. H. The consideration of this acceptance was the sale of the property in controversy, by witness as agent for his wife, to C., in the spring of 1857; that witness was agent of his wife for all business, and especially the sale of this property, but not appointed by writing; that she got the benefit of the proceeds of the sale; that no deed or other conveyance was made to Clarkson for the lots, but that soon after the purchase, he went into the possession thereof and erected thereon a dwelling and other improvements; that sometime in May or June, 1863, Scribner, professing to act as the agent of Bayer, came to Chillicothe, in Missouri, and offered Mrs. H. six hundred and fifty dollars for a war-

ranty deed to the lot, which she refused to take; that he then offered that sum for a quitclaim deed; that before the deed was executed, he, witness, told Scribner of the sale to Clarkson, and of the payment of the eight hundred dollars, and that in the transaction he had acted as agent of his wife; that Scribner said in reply that it made no difference, that she had a good title to the lots and he was willing to pay six hundred and fifty dollars for them and take a quitclaim deed; that Mrs. H. there executed the deed upon his paying the money; that the sale to Clarkson was in good faith, and for the full value of the property, and that Mrs. H. was always content therewith.

The deposition of Tabitha C. Hughes was read, which states that Scribner called on her at Chillicothe in June 1863, and inquired relative to some property he claimed she owned in Leavenworth, making known to her that he was acting as agent of Bayer; said property being town lots; that she had been away from Leavenworth five or six years, and had forgotten all about property there, but knew she had owned property there; that there had been transactions between her husband and Clarkson in relation to her property there, but during her negotiation with Scribner, it had escaped her recollections; she could not recollect the particulars of the transactions with Clarkson; that to induce her to sell the property Scribner informed her that it was about to be confiscated; that the property belonged to her without doubt, and that the fact of its being in danger of being confiscated, had induced him to look up the title, and insisted on her selling it to Bayer, and making a warranty deed, which she refused; that after holding out many inducements, he offered six hundred and fifty dollars for her quitclaim deed, which she accepted, expressly stipulating with Scribner that she was not to be held liable for any want of title. She testified that there was a transaction between her husband and Vineyard about a tract of land sold to Hughes by V., as the prop-

Bayer v. Cockerill.

erty of Mrs. Lyon, but that she had forgotten the particulars, nor had she any knowledge of the payment of money by Clarkson to Todd or Vineyard, nor any knowledge of any conveyance from Clarkson to Todd, or of having made any objection to such conveyance. That she told Scribner she had forgotten all about these transactions, and it was only on his insisting, that she had made the conveyance to Bayer, she told him she would rather not convey.

Lucien J. Eastin testified that after Mrs. Hughes left Leavenworth, Clarkson was in possession of the lots, and made improvements on them.

R. R. Rees testified that Hughes and Mrs. H. lived in Leavenworth as husband and wife prior to the fall of 1857 or spring of 1858, when they left Kansas.

W. S. Vandorn testified that Clarkson went into posession of the lots in 1858, and continued in possession until he sold to Todd, having made improvements to the value of $1,500; that Todd went into possession and continued therein until he left the state in 1860, after which John T. Urel remained in possession as his tenant and the tenant of his heirs until the summer of 1863, when he was forcibly ejected by Bayer.

John T. Urel testified that he went onto the premises in the summer of 1860 as the tenant of Todd, and continued in possession until June 1863, when he was forcibly ejected by Bayer. He further testifies that before Scribner purchased for Bayer, he informed Scribner that he was occupying as tenant of Todd, and that Todd owned the property.

The defendant Bayer, having read in evidence the deed of Mrs. Hughes to him, read the deposition of Mrs. H., who testified that she had no recollections about any of the transactions with Clarkson or Todd, or Vineyard, but said that she had not been paid by any one for the property in controversy, except Bayer; about that she was positive.

H. L. Scribner testified that while he was negotiating with Mrs. H. for the property, her husband was present; that she informed witness that she was the owner of the property; that she had never sold it to Clarkson or any other person, nor had she authorized any one to sell it; that she had never received anything from Clarkson for it, nor had she authorized him to convey it to Todd. The witness said that when he made the purchase he knew Urel was in possession, and that he considered the property worth fifteen hundred dollars. This was all the testimony on either side.

The court found there was due the plaintiff on the note referred to, the sum of two thousand four hundred and seventy-four dollars; that in May 1858, Mrs. Hughes, by Thomas C. Hughes, her agent, sold by parol to Clarkson, the property in controversy; that Clarkson, by his deed dated May 12th, 1858, conveyed to Todd, who thereby became the owner; and that the plaintiff, Cockerill, had a lien against all of the defendants for the amount found due him.

The defendant Bayer, moved for a new trial, on the ground that the finding of the court was not sustained by sufficient evidence, and that the finding of the court was contrary to law; which motion was overruled and judgment rendered for Cockerill, directing the property to be sold and the proceeds applied to the payment of his claim.

To procure a reversal of this judgment Bayer brings the case here, making Cockerill alone a party to the proceeding in error.

Besides Bayer, there were a great many defendants in the court below, and among them the heirs of Todd; but the judgment as to any of them is not sought to be disturbed.

The case was argued by *W. P. Gambell*, for plaintiff, and by *L. B. Wheat*, for defendant in error.

The brief for plaintiff in error has not reached the hands of the reporter.

*Clough & Wheat*, for defendant in error, submitted :

1st. The petition below contained the usual allegations of a petition to foreclose a mortgage as against the makers and third persons claiming an interest in the premises. There is nothing in it showing the nature of the controversy between Cockerill and Bayer; it left it to plaintiff in error, defendant below, to show what his rights were. This was enough. *Morgan* v. *Smith*, 11 *Ill.*, 194; *Cooper's Eq. Pl.*, 6; *Story's Eq. Pl.*, sec. 255.

2d. The record shows no objection to evidence admitted.

3d. A *prima facie* title in fee simple, was shown in Todd, the mortgagor; this by proof of possession in Clarkson, his deed to Todd, and Todd's subsequent possession and improvements. 2 *Greenl. Ev.*, sec. 309.

This with the note and mortgage made a perfect showing of right to the judgment as to all defendants not showing a better title.

4th. Clark and Todd are admitted to have been the owners respectively of the lands, each conveyed to Clarkson. As to whether the conveyances to Clarkson vested the title in trust for Mr. or Mrs. Hughes, depends upon the construction thereof under the laws in force. *Laws '55.*

5th. The common law as to the rights of married women, was then in force. *Laws 1855, p.* 469.

The common law has defined the rule governing the rights of parties depending thereon. 1 *Blackst. Com.*, 44, 54, 56, 63, 67, 68, 69, 71.

Mr. and Mrs. Hughes resided in Kansas at the time. All the personal property of the wife became by reason thereof the property of the husband. If her money paid for the land by force of law, the conveyance vested the

37

title in him. 1 *Lead. Cases in Eq.*, 277 ;. *Wilber* v. *Crane*, 13 *Pick.*, 290.

6th.    To vest title in a married woman, an intent must appear to vest the title in opposition to the marital rights. 1 *Lead. Cases Eq.*, 520, 539, *and cases.*

The words used in the deeds did not create such a separate estate in her. 1 *Lead. Cases Eq.*, 520, 521, 539.

The use was by said deeds vested in the husband. 1 *Lead. Cases, Eq.*, 540 ; 5 *Humph.*, 337, 339 ; 1 *Freeman*, 215, 218 ; *Welch's Heirs* v. *Welch's Adm'r*, 14 *Ala.*, 77 ; 15 *Id.*, 170, 174.

The use being in the husband, the deed of the wife conveyed no title or interest. *Comp. L.* 699, *sec.* 17.

7th.    Hughes, as agent of his wife, sold to Clarkson. As between him and Clarkson, and Clarkson's grantees, he is *estopped* from claiming the property. 1 *Eq. Dig.* (*U. S.*) *p.* 428, *secs.* 54, 55, 56, 58, 60 *to* 65, 731, 5, 82, 90 ; 5 *John's Ch.*, 188 ; 6 *Id.*, 166 ; 1 *Id.*, 352 ; 2 *Lead. Cas. Eq.*, 64,65 ; 10 *Johns.*, 495 ; 1 *Blackf.*, 150.

Clarkson by his deed to Todd, is also *estopped. See authorities above.*

Clarkson admits a conveyance, by making default. Plaintiff in error not claiming through Clarkson, is not interested in the question whether Todd's heirs own the lots, and cannot object to the judgment unless he has a paramount title in himself.

8th.    But granting that a separate use of Mrs. Hughes was by Clarkson's deed vested in Todd, yet the judgment was correct. Mrs. Hughes, in that case must be considered as a *femme-sole* in respect to the authority she could exercise over her separate property. 1 *Lead. Cases, Eq.*, 502 to 508, 523, 524, 532, 533, 534, 538, 539, 543.

She could contract by writing or parol. 1 *Lead. Cases Eq.*, 511.

9th.    Clarkson having entered into possession under a purchase from Mrs. Hughes, through the agency of her

husband, and made improvements on the premises, and having paid for the same he could enforce the specific performance of the contract. *Lester* v. *Foxcraft*, 1 *Lead. Cas. Eq.*, 719, *and cases*.

10th. The parol sale having been recognized and adopted by Mrs. Hughes, she was bound by it. *Chitty on Contracts*, 202, *note and p.* 359.

11th. The possession by Clarkson and his grantees and their agents, was notice to plaintiff in error of their rights, and the suit was *lis pendens* at the time of the purchase by plaintiff in error. 15 *Ill.*, 542; 6 *Wend.*, 213; 4 *N. H.*, 262; 22 *Maine,* 312; 2 *Mass.*, 506; *Landers* v. *Brant*, 10 *How.*, 348; *Dyer* v. *Martin*, 4 *Scam.*, 146; *Dixon* v. *Doe*, 1 *S. & M.*, 70; *Boling* v. *Ewing*, 9 *Dana*, 76; 12 *Ala.*, 17; 1 *Lead. Cases Eq.*, 165.

12th. Possession by vendee's lessee is vendee's possession, and is part performance. 1 *Lead. Cases, Eq.*, 739.

Possession by strangers, presumed to be taken under contract. *Id.*, 773.

13th. Even if possession was not notice of the sale to Clarkson, Thomas C. Hughes testified that he informed Scribner, the agent of plaintiff in error, of the sale to Clarkson. Notice to an agent is notice to the principal. *See* 1 *Lead. Cases Eq.*, 163; *see evidence of Hughes*.

14th. The authority for, and sale to Clarkson by Mrs. Hughes, was sufficiently shown by the evidence. *See Evidence of Vineyard*; 1 *Greenl. Ev.*, sec. 189.

15th. The finding is general for the plaintiff, under section 291 of the Code, and with voluntary special findings, consistent therewith. The special findings, made without request, are nullities. The court cannot look into the evidence to see if it sustains the general finding. *Major* v. *Major*, 2 *Kans.*, 337.

*By the Court*, CROZIER, C. J.

Two objections are made to the judgment below: *First.* That the findings were not sustained by sufficient evidence:

*Second.* That the findings, if sustained by the evidence, did not warrant the judgment. These will be considered in the order stated. The first point under the first head is as to the effect of the deeds from Clark and Few to Clarkson. It is claimed in behalf of Cockerill, that they operated, under the law, as it stood at the time of their execution, to put the titles in Thomas C. Hughes. It is true they do not contain the words "trustee for the use and benefit of Tabitha C. Hughes," but that they should have included them, was not, at the time of their execution, necessary to exclude her husband from any interest in the property. Whatever will evidence the intention of the grantor to have been that the conveyance should be for her sole use and benefit will be sufficient. The deed all the way through designates Clarkson as the trustee of Mrs. Hughes, and the covenants are with him in that capacity. The statute of 1855 in force at the time, expressly provides that such conveyance shall, to all intents and purposes, vest the title in the *cestry que trust*, so that, as to Clarkson at least, the title vests in Mrs. H., and if there could be any doubt of the effect of the conveyance as to the husband, that doubt will be removed by an examination of the testimony. It nowhere shows the source of the consideration. It don't appear whether it was money, or whatever else. It is not shown to have even been in the possession of Hughes or his wife. Had it been shown to have been money or other personal property, and in her possession, her possession might have been regarded as his possession, and operated to vest the ownership in him ; or had it been a chose in action and he shown to have exercised over it any act of ownership whatever, however apparently trifling, perhaps such a reduction to possession as the law makes necessary to vest the title in him, might have been inferred. But there is nothing of this in the testimony. All there is in the record upon the subject, is the recital in the deed, that the consideration was paid by

Clarkson; under such circumstances it cannot be presumed that there was such possession of the consideration on the part of the husband, as would, by the common law, make the conveyance inure to his benefit. The conveyances, therefore, from Clark and Few to Clarkson, vest the title solely and absolutely in Mrs. Hughes.

The next question is, whether the conveyance from Clarkson to Todd, vested the title in the latter as to Mrs. Hughes and Clarkson. There can be no doubt but that whatever of title, interest or claim, legal or equitable, Clarkson had, passed to Todd by the conveyance. The court found there was a sale by parol, by Mrs. Hughes to Clarkson, which means, probably, that there was a sale to Clarkson evidenced by parol testimony. In a proceeding by Clarkson against Mrs. Hughes to compel a conveyance, it would have been sufficient for a decree to that effect, notwithstanding the statute of 1857, if by parol testimony it was shown that she had received the purchase money and put him in possession, he having while in such possession, made valuable improvements. The ground upon which he would have been entitled to such decree would have been that he had the equitable title, and was entitled to the legal one. So far as these two, and all the other defendants, except Bayer, were concerned, it was competent to show that the equitable title was in Clarkson, and if that could have been shown by parol in the case supposed—of which there can scarcely be a doubt—then might it be so shown in this case. That the evidence although somewhat contradictory, would warrant such finding is very manifest. It tended to prove that Hughes, acting as the agent of his wife by verbal appointment, sold the property to Clarkson; that Clarkson paid or caused to be paid, her draft on him for the purchase money; that Clarkson was, by Hughes put in possession, and made valuable improvements; that the payment made by Clarkson inured directly to the benefit of Mrs. Hughes, and that she, being acquainted

with the transaction, consented to or acquiesced therein. The finding of the court below, understood as above indicated, included these facts, and although this court, had the evidence been here for original consideration, might have come to a conclusion different from that arrived at by the court below, the finding for that reason alone ought not to be disturbed. There having been evidence tending to show, or from which might properly be inferred, the existence of every necessary fact, this court is bound by the finding of the court below, and must conclude, as that court did, that the equitable title was in Clarkson; was by him conveyed to Todd, and by Todd pledged to Cockerill. The only remaining question upon this branch of the case is as to the effect of the conveyance by Mrs. Hughes to Bayer; and to this there are three tolerably satisfactory answers. That conveyance was made June 2d, 1863, and is nothing more than a quitclaim. It purports only to "remise, release and quitclaim" to Bayer, the property in controversy; that is, whatever interest she had at the time, was conveyed by it. She had only the legal title subject to the equitable title which had passed to Todd, and had been pledged to Cockerill; Bayer took subject to the same equities. Again: The court below was warranted in finding that Bayer had notice of the equitable rights of Cockerill. It might properly have found from the testimony that before Bayer purchased, all the deeds referred to, as well as the mortgage to Cockerill, were of record in the proper office; that Todd's heirs were in possession by their tenant, and that Bayer's agent had been actually notified of this possession and of the sale by Hughes as agent of his wife, to Clarkson, and the payment of the purchase money, and of Mrs. Hughes' acquiescence therein; and that court did so find in finding that Cockerill's lien was prior to all others, including Bayers, whatever it might be.

Finally: The suit in the court below was commenced February 13th, 1863; the summons was served on the 23d

of the same month, and the publication was completed on the sixth of April, in the same year. Under these circumstances, no person, according to the 87th section of the Code, could acquire an interest in the real estate against Cockerill's rights, upon the second objection to the judgment, but title remains to be determined. The construction hereinbefore put upon the findings of the court below, was to make them include the findings of the following facts, viz: Mrs. Hughes sold to Clarkson, received the purchase money and put him in possession, under which he made valuable improvements; that he conveyed to Todd, and Todd mortgaged to Cockerill to secure the money sued for; that Boyer had notice of all these things when he took his conveyance, and that the money sought to be recovered had not been paid. These facts, as between Cockerill and Bayer, gave the former the right to subject the lands to the payment of his claims, and such was the judgment rendered. It will be affirmed.

All the justices concurring.