THE SOUTH-SIDE TOWN, MINING AND MANUFACTURING COMPANY v. JOHN H. RHODES, *et al.*

PAROL SALE; *Equitable Title.* Where a mining and manufacturing company is the owner of a large number of town lots, which it is engaged in selling, and its secretary and general manager makes a verbal contract to sell a lot to a purchaser, and such purchaser pays the company therefor by his own labor, and is put in possession of the lot by said officers, and while so in possession makes valuable improvements thereon, with the knowledge and consent of all the members of the company, such purchaser thereby acquires the equitable title to the lot.

*Error from Cherokee District Court.*

ACTION brought by *The South-Side Town, Mining and Manufacturing Company* against *John H. Rhodes* and his wife, on September 1, 1882, to recover the possession of mining lot No. 25, upon the northeast quarter of the southeast quarter of section 14, in township 34 south, of range 25, east of the 6th principal meridian, formerly lots Nos. 1 and 2, in block No. 19, of Ford's addition to the city of Galena, Cherokee county, in this state. Trial had at the April Term, 1883, before the court, with a jury. The jury returned the following special findings:

"1. Did the plaintiff, at the time of the commencement of this action, have the legal title to the property and premises described in its petition in this action? A. Yes.

"2. Were said defendants, John H. Rhodes and Mrs. John H. Rhodes, in possession of said premises at the commencement of this action, or any part thereof? If yea, what part? A. Yes, in full possession of lots 1 and 2, block 19.

"3. What, if anything, do you find to be the rental value of the premises in question? A. $———.

"4. Were said defendants in possession of said premises or any part thereof under a contract for the purchase of the same? If yea, what part? A. Yes, lots 1 and 2, block 19.

"5. If yea, with whom was the contract made? What authority did he have to make it? A. 1st. William March, authorized agent of an association of persons who, immediately after contract, formed themselves into the South-Side Town and Mining Company. 2d. Wm. J. Lea, secretary, and W. B. Stone, superintendent, of South-Side Town and Mining Company.

"6. Was the contract in writing, or verbal? A. Verbal.

"7. What was the contract? State its terms fully and in detail. A. Contract made by William March, at $25, for one lot, ratified by W. J. Lea, as secretary; and lot 2, sold by Lea for $25. Contract ratified by W. B. Stone, as superintendent, and an agreement made by him that defendant could pay for lots in work for the company.

"8. Were there any mineral reservations in said contract, if any you find so made? A. No.

"9. Did said defendants take possession of the whole of said premises under and by virtue of said contract? A. Yes.

"10. Have the defendants, or either of them, paid any money for said lots or other property therefor? A. Yes.

"11. If yea, how much and in what was it paid? A. $50, in labor.

"12. Were the defendants in the actual, open, visible, notorious and exclusive possession of the whole of said premises at the time the plaintiff acquired the title to said premises in question? A. Yes.

"13. If you answer 4 in the affirmative, have said defendants made lasting and valuable improvements on said premises, under and by virtue thereof relying thereon? A. Yes.

"14. If you answer question 13 in the affirmative, what are the improvements? State their value; state fully. A. Value of house, $400; shaft, $100.

"15. Have the defendants been recognized by the plaintiff as the owners of the premises in question? If yea, in what manner? State the facts fully. A. Yes, by peaceable and

undisturbed possession of the premises for several years, with the knowledge and consent of plaintiff.

"16. Did the plaintiff intend to charge the defendants with the rent for said premises? If so, how much? A. No.

"17. Should you find that the defendants went into possession of the premises under a contract of purchase therefor, was such contract subsequently confirmed, ratified or recognized by the plaintiff? A. Yes, to both questions."

The plaintiff thereupon moved the court to set aside the special findings of the jury, and moved the court for judgment upon findings Nos. 1, 2, and 3. The special findings asked by plaintiff to be set aside were 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17, for the following reasons: that they were contrary to the evidence in the action; that they were contrary to law. The court set aside the answer to question 3, and also the answer to question 7, relating to the sale of lot 2, but approved the other special findings returned by the jury. Thereupon the court entered judgment in favor of the defendants for said lot one, and decreed that the plaintiff should, within twenty days from the date of the judgment, convey the same to the defendants by proper deed therefor; and in the event that plaintiff should fail to perform the decree, then that the decree of the court should stand as a conveyance of said lot to defendants. The court also adjudged that the plaintiff should pay all costs, taxed at $67.50. The court further gave judgment, that the plaintiff should have and recover of and from the defendants the possession of said lot two. *The Company* excepted to the judgment rendered in favor of the defendants for lot one, and brings the case here.

*W. R. Cowley*, for plaintiff in error.

*W. M. Matheny*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action by the plaintiff against the defendants for the recovery of lots one and two, in block nineteen, in Ford's addition to the city of Galena, in Cherokee county. The legal title of the lots is in the plaintiff, but

the defendants claim to be the equitable owners thereof under a verbal contract for the conveyance of the premises to them, the taking possession under such contract, the payment of the contract-price, and the making of valuable improvements thereon of over three hundred dollars. Upon the trial, judgment was rendered in favor of plaintiff for the recovery of possession of lot two, and that defendants were the equitable owners of lot one.

It is insisted that the defendants were not entitled to judgment in their favor as regards said lot one. We have examined the evidence produced upon the trial, and are satisfied that there are sufficient findings of the jury, not set aside by the trial court, to support the judgment against plaintiff. It is immaterial whether William March was in May, 1877, the agent of the railroad company owning the premises, or the agent of the South-Side Town and Mining Company, subsequently called the South-Side Town, Mining and Manufacturing Company. Some preliminary arrangements were made by John H. Rhodes with William March, about May 7, 1877, concerning the purchase of the property in controversy. At that time, the lots were not surveyed. In the latter part of May, 1877, after the South-Side Town and Mining Company was organized, March told Rhodes that he was out of the company, but asked W. J. Lea, the secretary of the company, to go and show Rhodes a good lot. Lea, with Howard Gove, one of the directors of the company, went and showed him the lot. It was then understood that he was to have the lot for twenty-five dollars, and after that he moved his house upon it. Under an arrangement with W. B. Stone, the superintendent and general manager of the company, he commenced to work for the company on July 23, 1877, to pay for the lot. He paid for the same with his labor, and ever since the defendants have been in the actual, open and exclusive possession of the premises, with the knowledge of plaintiff.

It is contended that the plaintiff did not sell the lot to defendants, or consent to any sale being made, upon the theory that before Lea's or Stone's contract for the sale was binding

upon the company, it should have received the approval of the board of directors. We do not think that this was necessary. If the company, through its secretary, superintendent, and general manager, made a verbal contract to sell the property in question to the defendants, who paid the purchase-money, and were put in and took possession, and while so in possession made the valuable improvements testified to, they thereby acquired the equitable title to the lot, and are entitled to the legal title. (*Bayer v. Cockerill*, 3 Kas. 282; *Galbraith v. Galbraith*, 5 id. 402.)

The evidence shows that the membership of the company was confined to a few persons only; that they all had knowledge of the improvements made by defendants upon the premises, and that the defendants were in possession thereof; and as the company accepted the contract-price for the lot, it is now too late for the company to say that the sale to the defendants was irregular or invalid because its officers did not act in conformity with some rule or by-law of the company requiring all sales to be submitted to the directors for their approval. If the secretary and general manager violated any rule or by-law, they may be responsible, but the rights of the defendants are not to be prejudiced thereby.

There being testimony in support of the claim of the defendants, contradicted though it was, if the jury chose, as they had a right, to believe it, and to disbelieve the evidence on behalf of plaintiff, or give it less weight, we can only, in accordance with well-settled rules in such cases, let the judgment stand. It will therefore be affirmed.

All the Justices concurring.