No. 46,648

Paul J. Foley and Art Loomis, a partnership d/b/a Foley-Loomis Oil Co., *Appellants*, v. L. E. Phillips, Jr., J. E. Morris, and W. H. Rex, *Appellees*.

(508 P. 2d 975)

Opinion filed April 7, 1973.

*Gerald Sawatzky*, of Wichita, argued the cause, and *John F. Eberhardt*, also of Wichita, and *Robert M. Bond*, of Bond & Bond, of El Dorado, and Foulston, Siefkin, Powers & Eberhardt, of Wichita, were with him on the brief for the appellants.

*Richard Jones*, of Wichita, argued the cause, and *Michael L. Jones*, also of Wichita, was with him on the brief for L. E. Phillips, Jr., appellee.

*James B. McKay*, of El Dorado, argued the cause, and *James B. McKay, Jr.*, also of El Dorado, was with him on the brief for J. E. Morris and W. H. Rex, appellees.

The opinion of the court was delivered by

Fromme, J.: Plaintiffs seek to impose a constructive trust on five oil and gas leases covering 540 acres in Sections 5 and 6, Township 27S, Range 7E, in Butler County, Kansas, based upon their claim that said acreage was a natural outgrowth of a joint drilling venture entered into by the parties to this action. The original drilling venture leases covered 600 acres in Sections 32 and 33, Township 26S, Range 7E, in Butler County, Kansas, and will be

referred to herein as the PMA land. Protective leases covering an additional 360 acres of land on the north, the west and the south of the PMA land were taken as an extension of the original drilling venture. There is no question raised with respect to the protective leases which have been nonproductive.

The defendants successfully contended in the court below that the leases which were taken by them on the 540 acres were no part of the joint drilling venture on the PMA land. There was evidence these leases were merely a part of an additional 3900 acres leased by defendants, Rex and Morris, in the neighborhood.

After a trial in the district court judgment was entered for the defendants based upon findings that the wells drilled by the defendants on the 540 acres were not on leases within the scope of the original drilling venture as contemplated by the parties and that the wells thereon were not an extension of production in the PMA pool.

Plaintiffs appeal asserting that the undisputed facts require a judgment in their favor. It therefore appears necessary to summarize some of the facts disclosed by the evidence.

The plaintiffs Foley and Loomis have been interested in exploration and production of oil for many years, however their interests have been restricted to investment as distinguished from actual drilling and operating oil wells.

The defendants Rex and Morris are seasoned oil operators in this area. They own and manage an oil well drilling company, they operate producing wells and they own oil interests in the immediate area. They have operated both jointly and severally in the area dating back to 1930. Although Rex is made a party defendant in this action he was not interested in the joint drilling venture on the PMA land. The defendant L. E. Phillips, Jr. is also a seasoned oil operator.

The original venture was conceived in this manner. In 1966, George A. McCaleb, a geologist, became interested in the geology underlying the PMA land in Section 32. Production had previously been obtained by Rex and Morris one mile north in the Young pool. There were other producing wells within a radius of four miles from the PMA land.

On the basis of information available in the area McCaleb prepared a stratigraphic contour map of the Mississippi formation underlying Section 32. The map indicated a "high" within the boundaries of the NW¼ of the section. Armed with his map and

a personal conviction that oil could be produced from the NW¼ of Section 32 he approached a driller by the name of L. C. Crowe. McCaleb and Crowe, neither of whom are parties to this action, conceived the original plan to promote a drilling venture on the PMA land. This land is owned by a family corporation and the plaintiff Foley is a principal stockholder of the corporation. Crowe talked with Foley about the prospective drilling venture and obtained a lease through him on 440 acres of the PMA land. McCaleb then obtained a lease on 160 acres of adjoining land, known as the Cowell land, which is also located in Section 32. After these leases were obtained Crowe and McCaleb began looking for investors interested in acquiring shares in the leases in order to spread the cost of drilling. Before the first producing well was drilled the working interest in these leases was owned as follows: L. C. Crowe, ¼th; L. E. Phillips, Jr., ⅜ths; J. E. Morris, ¼th; and the plaintiffs, Foley and Loomis, ⅛th. The geologist, McCaleb, received a ¹⁄₁₆th overriding royalty interest in the leases for his part in setting up the drilling venture. It was understood that Crowe was to be the driller and operator.

The first producing well was drilled June 6, 1966, in the NW¼ of Section 32. Shortly thereafter Crowe, Phillips, Morris and McCaleb met and discussed the need, if any, for additional protective leases. Foley and Loomis were not present. McCaleb at that time explained the limited nature of what he believed to be the producing pool and attempted to discourage the taking of protective leases. However, the others agreed that 360 acres in protective leases should be taken on the north, west and south boundaries of the original acreage. The leases were obtained in June, 1966, and the original owners of the working interests (Crowe, Phillips, Morris, Foley and Loomis) received assignments for their respective shares of these leases which extended the scope of the original drilling venture. Five producing wells and two nonproducers were drilled on the PMA land; all were located on the NW¼ of Section 32.

As a result of the drilling of the PMA wells interest in oil exploration was revived in the area. Rex and Morris renewed their former interest which dated back to 1930 and they obtained leases on approximately 3900 acres lying to the east, southeast, south and southwest of the PMA lands. The first of these leases was taken during the latter part of June, 1966. Their leasing activities in the area con-

tinued on through 1966, 1967, and 1968, until they held leases on the entire 3900 acres to which we have previously referred.

In February, 1967, after 5 wells had been drilled in the PMA pool, L. E. Phillips, Jr., one of the adventurers in the PMA drilling venture, had his son, a geologist, supervise core hole surveys in the area to the south of the PMA pool. At least one core hole was drilled on the PMA land. The information from these surveys was used in connection with information available on the PMA wells and other wells in the general area to complete a stratigraphic contour map of the Kansas City and Mississippi formations south of the PMA pool.

In September, 1966, Rex and Morris set up a separate drilling venture on portions of their acreage and interested Phillips and Crowe in the venture. The working interest in this drilling venture was owned as follows: Rex and Morris, 7/16ths; Phillips, 7/16ths; and Crowe, 1/8th.

After this drilling venture was promoted two dry holes were drilled in September, 1966, one was located two miles east of the PMA pool and the second was drilled more than a mile south of the PMA pool. Then in May, 1967, after the core hole surveys were completed, a producing oil well was drilled in the NE¼ of Section 6. The lease on which this well was drilled adjoined the protective leases taken in connection with the PMA drilling venture. Between May 21 and September 30, 1967, six producing wells were drilled in the E½ of the NE¼ of Section 6 and the W½ of the NW¼ of Section 5. These wells are located in what will be referred to as the Henn pool. The Henn pool is located approximately one mile south of the PMA pool. Two dry holes have been drilled on locations bordering the Henn pool, one on the north and one on the northwest, and at least one additional dry hole has been drilled a mile east of the Henn pool. The 540 acres on which the plaintiffs seek to impose a constructive trust include the acreage which encompasses the Henn pool. These leases were taken by Rex and Morris on June 25, 1966, February 3, 1967, and April 24, 1967. The present action was filed February 10, 1969, 17 months after the last producing well was drilled in the Henn pool and twenty months after the last producing well was drilled in the PMA pool.

The parties to this action are agreed that a joint drilling venture existed between the parties who owned interests in the leases on the PMA and Cowell land in Section 32 together with the land covered by the protective leases. However, the plaintiffs contend this joint

drilling venture encompassed not only the wells drilled on the PMA land but extended to the leases taken by Rex and Morris and the wells drilled in May, June, July, August and September, 1967, on the Henn land. In support thereof they argue the Henn pool is but an extension of the PMA pool and that production was obtained in the Henn pool by use of confidential information acquired by Phillips and Morris from the drilling of the PMA wells and from core hole surveys taken in part on the PMA land.

The rights and duties of coadventurers in oil and gas ventures have received attention in Kansas for many years. See *Crawford v. Forrester*, 108 Kan. 222, 194 Pac. 635; *More v. Burroughs*, 111 Kan. 28, 205 Pac. 1029; *Whan v. Smith*, 130 Kan. 9, 285 Pac. 589; *Shoemake v. Davis*, 146 Kan. 909, 73 P. 2d 1043; *Ballard v. Claude Drilling Co.*, 149 Kan. 506, 88 P. 2d 1021; *Yeager v. Graham*, 150 Kan. 411, 94 P. 2d 317; *Grannell v. Wakefield*, 172 Kan. 685, 242 P. 2d 1075; *Potucek v. Blair*, 176 Kan. 263, 270 P. 2d 240; and *Martin v. Hunter*, 179 Kan. 578, 297 P. 2d 153. The relationship of coadventurers in oil and gas ventures is one of trust and confidence in all matters respecting the conduct and operation of the business for which the joint venture was formed, and each adventurer must deal fairly and in good faith in the subject matter of the venture for the benefit of all coadventurers. (*More v. Burroughs*, supra; *Ballard v. Claude Drilling Co.*, supra; *Potucek v. Blair*, supra; *Martin v. Hunter*, supra.)

A joint venture is distinguished from a partnership in that the joint venture generally relates to a single business venture with limitations as to purpose and extent of the operation. In 4 Summers Oil and Gas, Sec. 721.1, p. 264, it is stated:

"A joint adventure is usually defined as an association of persons, created by express or implied agreement, who combine their property, knowledge and efforts to carry out a single business venture for the purpose of realizing a profit. . . ."

In *Martin v. Hunter*, supra, it is said:

". . . The general rule is that until the joint adventure has terminated or the enterprise has been abandoned, a joint adventurer cannot exclude his associates from an interest in the property by purchasing it for his individual account; neither can he acquire for his individual benefit, or for the benefit of himself and one of the other co-adventurers, an interest therein antagonistic to the interest of his co-associates, and if he does so purchase or acquire such interest in breach of his duty to his co-adventurers, he must account to them therefor. [citations omitted]" (179 Kan. p. 586.)

However, where the scope of an oil and gas drilling venture is determined, and certain identified leases are taken the fiduciary relationship created thereby extends only to those leases within the scope of the venture and to any additional leases which are available and which may be necessary to fully exploit the particular source or pool discovered as a result of the venture. The fiduciary relationship created by a joint drilling venture does not forbid further acquisition and development of leases in the general area by individual venturers so long as these leases are not embraced within the scope of the enterprise or are not a natural outgrowth therefrom.

In 46 Am. Jur. 2d, Joint Ventures, § 54, pp. 74, 75, it is stated:

"Obviously there can be no recovery by one coventurer for property acquired by another after the joint venture has been completely terminated. . . . Clearly, where a joint venture has been formed for the acquisition, ownership, or development of certain defined property, the fiduciary relationship does not forbid the acquisition, ownership, or development by one of the parties for his own benefit of property not embraced in the enterprise and outside its scope."

Our cases agree with the above statement of law. In our present case the primary issue presented and tried by the district court was whether the acquisition, ownership and development of the leases on Sections 5 and 6 (the Henn land) were embraced in the enterprise and were within the scope of the joint drilling venture on Section 32 (the PMA land). The trial court found they were not. There was evidence that the production on the Henn land was from an entirely separate source and separated by a closure. If there is substantial evidence to support the findings of the trial court they will not be disturbed on appeal. (*Mann v. Good,* 202 Kan. 631, Syl. ¶ 1, 451 P. 2d 233; *Branstetter v. Cox,* 209 Kan. 332, 336, 496 P. 2d 1345.)

The two men who conceived and promoted this joint drilling venture, McCaleb and Crowe, are not parties to this action yet both testified that Sections 5 and 6 (the Henn land) were not embraced in the PMA enterprise and were outside its scope. The stratigraphic contour map furnished by McCaleb and used by him in "selling" the venture to Crowe did not include the Henn land. All coadventurers were acquainted with the nature of the area in which the drilling venture was to be carried on. Prior production in the area was limited to relatively small pools where "highs" were found. There had been production in the area for over 35 years.

At least two geologists, in addition to McCaleb, testified that the configuration appearing on the stratigraphic contour maps of the area covering both the Mississippi and the Kansas City formations indicated to them there was a closure which sealed off communication between the PMA pool in Section 32 and the Henn pool in Sections 5 and 6. The PMA wells produced from the Mississippi formation and the Henn wells produced from the Kansas City formation. This lack of communication between the two pools has been confirmed to some extent by dry holes drilled on the edges of the two pools and by a failure of either group to further expand the two pools into the area separating them, a distance of approximately one mile.

The evidence in this case was conflicting in many important details but after a careful examination of the record we cannot say that the wells drilled in Sections 5 and 6 were a natural outgrowth and expansion of the joint drilling venture initiated a year earlier on Section 32. The appellants rely heavily upon *Kaye v. Smitherman,* 225 F. 2d 583 (10 CA). The defendants in that case obtained a 914 acre block of leases adjoining the initial 480 acre joint venture block. The defendants contended the 914 acre block was a "separate deal" unrelated to the initial 480 acre block. The trial court there found the 914 acre block was a "natural outgrowth" of the initial joint venture acreage and that acquisition of the block "was a continuation of the exploitation" of the initial area contemplated by the joint venturers. There, as in our present case, the original joint drilling venture was sold on the basis of a stratigraphic map. The difference is that in *Kaye v. Smitherman,* supra, the map showed the likely presence of a single production source covering the entire area of both blocks of leases and the trial court found that the 914 acre block was acquired in reliance on the geological information furnished by the other coadventurers. In *Kaye* all wells in both adjoining blocks were producing from the same formation and from approximately the same depth; not so in the present case.

We see no useful purpose in further narrating the conflicting evidence contained in the record. The facts in evidence favorable to the defendants sustain the trial court's findings. This is essentially a fact case and the trial court's findings and judgment are supported by substantial evidence.

The judgment is affirmed.