P. Stephen FUQUA, Appellant,

v.

Warren W. TAYLOR, et al., Appellee.

No. 05–83–01359–CV.

Court of Appeals of Texas, Dallas.

Nov. 5, 1984.

Rehearing Denied Jan. 14, 1985.

Paul W. Wisdom, Jr., Mesquite, for appellant.

Thomas K. Boone, Dalton, Moore, Forde, Joiner & Stollenwerck, Dallas, for appellee.

Before AKIN, SPARLING and WHITHAM, JJ.

AKIN, Justice.

This is an appeal from the trial court's imposition of a constructive trust on income received by appellant from an overriding royalty interest (the "Sharpe lease") obtained by him. The first issue presented is whether, where the underlying facts are undisputed, determination of the existence, and breach, of a fiduciary duty are questions of law exclusively within the province of the court. We hold that they are. A second question is whether the trial court rendered judgment in the correct amount. We hold that it did not and modify the judgment as indicated *infra*. A third question is whether the trial court properly awarded judgment to persons who were not parties to the suit. We hold that it was error for the court to award judgment to such persons and, therefore, we modify the judgment to include only those persons who were parties to the suit. Further, we remand this cause for proceedings to determine the proper amount of recovery to be awarded each appellee. We address sever-

al additional contentions of appellant in a separate, unpublished opinion accompanying this opinion. The judgment of the trial court is otherwise affirmed, as modified.

Appellant is a geologist who specializes in re-entering dry oil and gas wells in order to make them productive. Two such re-entry prospects, located in Parker County, were referred to as the Sneed and the O'Kelley. Appellant secured leases on four tracts (the Sneed, Sharpe, Malone, and Long leases), totaling approximately 700 acres, surrounding the Sneed well and pooled them in order to comply with Railroad Commission regulations that required 640 acres for a gas unit. Appellant then attempted to obtain financing for the re-entry of the Sneed as a gas well. Frank Haughton, an independent petroleum landman who was sub-leasing office space from appellant, helped line up investors to supply the necessary funds. The investors invested various sums of money in exchange for a proportionate share of the working interest in the leases. As operator of the venture, appellant received a 16.75% share, for which he paid nothing. Each of the investors signed a letter agreement with appellant. This agreement, which included the Sharpe lease, provided, *inter alia,* that "[i]f at a later date it is deemed advisable to drill a second well you will be given the option to participate...."

Re-entry of the Sneed was commenced in October 1979. The well was completed in December 1979, and designated to the Railroad Commission as an oil, rather than a gas, well, but was not an economically feasible operation. Consequently, all leases except the Sneed operation were permitted to expire.

In November 1979, during the re-entry of the Sneed well, appellant had obtained a commitment from Texana, Inc. for the acquisition of leases surrounding the O'Kelley well, which was approximately two miles northeast of the Sneed well. Appellant reacquired the Sharpe lease in February 1980 and subsequently assigned that lease to Texana, reserving for himself a 12.5% overriding royalty (reduced to 9.62%

by subsequent assignments). Appellant acquired the O'Kelley lease in March 1980 and shortly thereafter assigned it to Texana, reserving a 6.25% override. The O'Kelley lease had not been part of the Sneed block. Several other leases were acquired and, together with the Sharpe and O'Kelley leases, formed the O'Kelley block. The Sharpe and O'Kelley wells became producers and appellant received income therefrom in accordance with his override. Appellees, working interest owners of a thirty-one percent interest in the Sneed venture, brought this action to impose, for their benefit, a constructive trust upon that income.

First, appellant contends that the trial court erred in ruling as a matter of law that he had a fiduciary duty to inform appellees of the opportunity to reacquire the Sharpe lease. Additionally, appellant asserts that the court's denial of his motion for judgment *non obstante veredicto* as to the Sharpe lease was error. By crosspoint, appellees contend, in effect, that the court erred in ruling as a matter of law that appellant did not have a fiduciary duty to inform appellees of the opportunity to acquire the O'Kelley lease. Specifically, appellees complain that the trial court erred in disregarding the jury's findings that appellant had and breached such a duty and in refusing to impose a constructive trust on appellant's income from the O'Kelley lease. We address these grounds together.

The question of whether a fiduciary duty exists is a question of law for the court's determination. *See Rankin v. Naftalis,* 557 S.W.2d 940 (Tex.1977); *Courseview, Inc. v. Phillips Petroleum Co.,* 158 Tex. 397, 312 S.W.2d 197 (1958); *Fitz-Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256 (1951); *Warner v. Winn,* 145 Tex. 302, 197 S.W.2d 338 (1946); *Kinzbach Tool Co., Inc. v. Corbett-Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509 (1942); and *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545 (1928). We note that although the existence of facts which give rise to a fidiciary duty are questions for the factfinder's determina-

tion, *MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d 334 (1944), the pertinent facts in the instant case are undisputed. Where the facts are undisputed, the question of whether a fiduciary duty has been breached is also a question of law to be determined by the court. Thus, the trial court improperly submitted issues to the jury inquiring whether appellant (1) breached his fiduciary duty to appellees as to the Sharpe reacquisition opportunity; (2) had a fiduciary duty to inform appellees of the O'Kelley acquisition opportunity; and (3) breached his fiduciary duty as to the O'Kelley. Accordingly, we hold that the trial court did not err in disregarding the jury's findings that appellant had and breached a fiduciary duty as to the O'Kelley lease.

■ The Supreme Court of Texas has recognized that the relationship between appellant and appellees, that of joint venturers for the development of a particular oil and gas lease, is fiduciary in character. *Rankin v. Naftalis*, 557 S.W.2d 940 (Tex. 1977). Fiduciary duties, however, extend only to dealings within the scope of that relationship. *Id.* In the instant case, the signed letter agreement established the relationship between the parties. That agreement, which provided that the investors would be given an option to participate if it was later deemed advisable to drill a second well, included the Sharpe lease but not the O'Kelley. Thus, the Sharpe lease was within the scope of the fiduciary relationship between appellant and appellees, but the O'Kelley lease was not. We conclude, therefore, that appellant had a fiduciary duty to inform appellees of the opportunity to reacquire the Sharpe lease, but that appellant had no such duty with respect to the acquisition of the O'Kelley lease.[1]

■ Appellees maintain, however, that appellant's fiduciary duty extended to the O'Kelley lease because: (1) the O'Kelley lease is in proximity with, though not adjacent to, the Sneed; and (2) appellant stated on a "Progress Report" to the Sneed work-

ing interest owners, dated February 2, 1981, that the O'Kelley well "was and is a candidate for re-entry." We do not agree. The O'Kelley lease was outside the scope of the fiduciary relationship established by their letter agreement. Appellees have not cited, nor have we discovered, any authority holding that mere proximity is sufficient to extend a fiduciary duty from property within the scope of a fiduciary relationship to other property. Nor do we view appellant's unilateral statement as extending his fiduciary duty to appellees to the O'Kelley lease.

■ Accordingly, we hold that the trial court correctly ruled as a matter of law that appellant had a fiduciary duty to inform appellees of the Sharpe reacquisition opportunity. The evidence showed that appellant did not apprise appellees of the opportunity to reacquire the Sharpe lease; therefore, he breached his fiduciary duty as a matter of law. The breach of such a fiduciary duty, which (as here) renders the acquisition or retention of property by one person against others unconscionable, supports the imposition of a constructive trust. *Palmer v. Fuqua*, 641 F.2d 1146 (5th Cir. 1981); *See Rankin v. Naftalis*, 557 S.W.2d at 944; *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951).

■ Next, appellant contends that the trial court erred in awarding judgment to persons who were not parties to the suit. The judgment orders all past and future income attributable to appellant's interest in the Sharpe lease to be paid to a named trustee for the benefit of all Sneed working interest owners, regardless of whether they were parties to this action. We agree with appellant's contention. Judgment may not be granted in favor of a party not named in the suit as a plaintiff or a defendant. *Texaco, Inc. v. Wolfe*, 601 S.W.2d 737 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Accordingly, we modify the judgment to include only those working interest owners who were parties to this

---

1. Our holding is not affected by the fact that appellant reacquired the Sharpe lease shortly

after its expiration. *See Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401 (1960).

suit. *See Hardware Mutual Casualty v. Schantz*, 186 F.2d 868 (5th Cir.1951).

■ We do not hold, however, that appellees may recover all of the income from appellant's interest in the Sharpe lease. This action to impose a constructive trust is one in equity, and we conclude that it would violate equitable principles to allow appellees, who owned but thirty-one percent of the working interest, to recover one hundred percent of the trust income. Accordingly, we remand this cause to the trial court for a determination of the amount of each individual appellee's recovery, to be calculated according to the percentage of the entire working interest in the Sneed venture owned by each appellee. *See Meadows v. Bierschwale*, 516 S.W.2d 125 (Tex.1974); *Perez v. Hernandez*, 658 S.W.2d 697 (Tex.App.—Corpus Christi 1983, no writ). Our decision serves equity in that the income not distributed to appellees will be available for recovery by other working interest owners who are not parties to this cause, but who may later assert a claim.

■ Next, appellant contends that the trial court erred as to the amount of the judgment. We agree. The uncontroverted evidence showed that, as of the time of trial, appellant had already received income of $14,602.23 and was entitled to, but had not yet received, income of $3,260.46 from his override on the Sharpe lease. The trial court, however, awarded judgment in the amount of $17,862.69 *and* ordered all future income from appellant's interest in the Sharpe lease to be held in constructive trust. Appellant argues that this judgment permits, in effect, a double recovery of the $3,260.46 that was included in the judgment amount of $17,862.69 despite the fact that it had not been received by appellant as of the time of trial. Appellees do not dispute this argument. We agree that the trial court's judgment should not have included the $3,260.46. Likewise, the trial judge should have limited appellees' recovery to only thirty-one percent of the remaining $14,602.23. Consequently, we modify the judgment accordingly. *See*

*Soto v. Doehne*, 625 S.W.2d 60 (Tex.App.— San Antonio 1981, no writ); TEX.R.CIV.P. 435.

We remand this cause to the trial court for further proceedings, consistent with this opinion, to determine the proper amount of recovery to be awarded each appellee. The judgment of the trial court is otherwise affirmed, as modified herein.