OLD COLONY VENTURES
I, INC., Plaintiff,

v.

SMWNPF HOLDINGS, INC.,
et al., Defendants.

SMWNPF HOLDINGS, INC., Plaintiff,

v.

David COLGAN, et al., Defendants.

No. 95–2050–JWL.

United States District Court,
D. Kansas.

June 13, 1997.

**1424**

Gregory L. Musil, Steven D. Ruse, Shughart, Thomson & Kilroy, Overland Park, KS, P. John Brady, James C. Sullivan, Shughart, Thomson & Kilroy, Kansas City, MO, for Old Colony Ventures I, Inc., Rist Group Inc.

Renana B. Abrams, Roy R. Darke, Jerald S. Meyer, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, Robert P. Wray, CGB Capital Corp., Overland Park, KS, for SMWNPF Holdings Inc.

Renana B. Abrams, Roy R. Darke, Jerald S. Meyer, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for Sheet Metal Workers Nat. Pension Fund.

Frank Wendt, Niewald, Waldeck & Brown, P.C., Overland Park, KS, for Gary Davis, Lana Davis.

Justin J. Johl, Kevin J. Karpin, Shook, Hardy & Bacon L.L.P., Overland Park, KS, for Roxanne Boyce, J. Brian Rothrock.

Elizabeth Drill Nay, Leland H. Corley, Thomas M. Martin, Lewis, Rice & Fingersh, L.C., Michael P. Howe, Kansas City, MO, Louis A. Cohn, Porter & Cohn, L.L.C., Kansas City, MO, for Brian McNichols, Bernhadine McNichols, Daniel Saale, Andrea Andrade, Doyle Collier, Sheila Collier, Mark Klunder, Nancy Klunder, Robert Parrott, Becky Parrott, Rhea F. Moor, Jr., Camilla Moor.

Frank Wendt, Michael K. Sears, Niewald, Waldeck & Brown, P.C., Overland Park, KS, for Stephanie Colgan, David Colgan.

Edward S. Sloan, Angela K. Green, Niewald, Waldeck & Brown, Kansas City, MO, Frank Wendt, Michael K. Sears, Niewald, Waldeck & Brown, P.C., Overland Park, KS, for Richard Goheen, Debbie Goheen.

Edward S. Sloan, Niewald, Waldeck & Brown, Kansas City, MO, Frank Wendt, Michael K. Sears, Niewald, Waldeck & Brown, P.C., Overland Park, KS, for Francis Uhlmer, Jean Uhlmer, Terry Bradshaw, Stephanie Bradshaw, Thomas Brackhahn, Alice Brackhahn, Clinton Jamison, Vicki Jamison.

John E. Ivan, Shawnee Mission, KS, for Woodland Hills Acquisition Corp., Inc., Woodland Hills Joint Venture.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This case concerns a real estate development project in Johnson County, Kansas, called Woodland Hills. Woodland Hills Joint Venture (WHJV) is a Kansas general partnership consisting of SMWNPF Holdings, Inc. (Holdings) and Old Colony Ventures I, Inc. (OCV) as partners. Holdings also financed the venture and took a security interest in WHJV's real property. In the present action, OCV brought various claims against Holdings with respect to the failed development. Holdings filed a number of counterclaims and cross-claims, including a claim for foreclosure of the real estate. Purchasers of lots within the development (the Homeowners) were added as defendants to the foreclosure claim. The Homeowners filed answers, alleging a prior interest in the subject real estate, and two Homeowners brought a counterclaim for a declaratory

judgment to that effect. Holdings has resolved the claims between it and all parties other than the Homeowners, leaving only the foreclosure claim and the counterclaim thereto.

The matter is presently before the court on cross-motions by Holdings (Doc. 577) and the Homeowners (Doc. 579) for summary judgment, as well as Holdings's motion to strike one exhibit submitted by the Homeowners (Doc. 591). The court concludes that a genuine issue of fact remains for trial with respect to a "clean hands" defense based on Holdings's alleged attempt to engineer WHJV's default of the loan, and Holdings's motion for summary judgment is denied with respect to that issue. Partial summary judgment is appropriate in favor of Holdings, however, with respect to any other defenses of the Homeowners, including defenses based on alleged representations by Holdings concerning a golf course, language in the loan agreement, and contract theory. The court denies the Homeowners' motion for summary judgment. The court grants Holdings's motion to strike.

## I. Uncontroverted Facts

WHJV was formed on February 20, 1992, when Holdings and OCV executed a joint venture agreement. According to the agreement, the purpose of WHJV was to develop certain real property in Johnson County, Kansas, of which WHJV became the record owner. To finance the project, Holdings agreed to loan WHJV $9,000,000. On April 2, 1992, WHJV executed a promissory note for that amount in favor of Holdings. The loan was secured by a mortgage on the real estate in favor of Holdings, which was duly recorded. On April 12, 1993, Holdings and WHJV amended the note and mortgage to reflect an increased loan amount of $9,500,-000.

The note is now in default, has been accelerated, and is fully due and payable. As of March 1, 1995, the note had a balance of $10,681,395 in principal and $997,500 in interest, with interest continuing to accrue to the present. Holdings seeks to foreclose on the property still subject to its mortgage. That property does not include the property pur-chased by the Homeowners, through builders, from WHJV; Holdings released its mortgage with respect to those lots at the time of the respective sales. WHJV has waived any right of redemption.

The Homeowners claim an interest in the subject property by way of documents filed and recorded by WHJV. On June 28, 1993, OCV, on behalf of WHJV as its managing venturer, filed with the Johnson County Register of Deeds a document entitled "Declaration of Easements, Protective Covenants, Conditions and Restrictions" (the Declaration). The Declaration established various protective covenants with respect to Woodland Hills, with its rights and obligations inuring to the benefit of purchasers of lots within the development. Holders of mortgages on individual lots obtained certain rights under the Declaration upon their foreclosure of the lots. The Declaration recognized Woodland Hills as a golf course community. A copy of the Declaration was given to each lot purchaser, who was required to acknowledge that the lot was conveyed subject to the Declaration. The warranty deed transferring the lot from WHJV also stated that it was subject to the Declaration. Lot reservations by which lots were marketed to potential purchasers by WHJV and its agent also provided that Woodland Hills was a golf course community and that lot sales were subject to the Declaration.

On November 12, 1992, WHJV, through OCV, filed a first plat for the development with the city of Lenexa. A second plat was filed on January 13, 1994.

On November 22, 1993, WHJV filed and recorded in Johnson County a "Restriction on the Use of Land" (Restriction). This document restricted the use of a portion of the development property to golf course purposes and stated that the restriction "shall run with the land and be binding upon subsequent owners of the Property."

The Homeowners also rely on various other statements concerning the anticipated golf course. Realtor disclosures provided to purchasers by WHJV's selling agent referred to the golf course and a "golf course community"; Holdings received a copy of these disclo-

sures before the first lot closing. A "Golf Course Acknowledgment Form" that WHJV gave to purchasers for their signatures represented that a portion of the development was "deed restricted to use as a golf course only!" In addition, according to the Homeowners, WHJV and its agent represented to purchasers that a golf course would be developed.

Holdings knew that the development would be marketed as a golf course community. Under the agreements between WHJV and Holdings, Holdings had to approve contracts and payments by WHJV in excess of $5000, and lot sales by WHJV were required to be approved by Holdings in writing or consistent with a plan approved by Holdings. Upon sale of a lot, Holdings would execute a partial release of its mortgage for that lot.

The Homeowners have filed various claims against Holdings and WHJV in state court. The Homeowners also claim an interest in the property by virtue of lis pendens liens filed in connection with those claims.

## II. Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party that also bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 536 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must ex-

ist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed. R.Civ.P. 1).

## III. Discussion

Because WHJV has defaulted on the loan, Holdings seeks to foreclose its mortgage on the property. Holdings claims that because the mortgage and its amendment were filed before the Declaration and Restriction, its interest has priority over any interests derived by the Homeowners from those documents. Holdings requests that it be allowed to sell the property without any encumbrances in favor of the Homeowners. The Homeowners contend that their interest in the property—specifically, their interest in having the golf course developed—should be given priority over the mortgage and that Holdings should not be able to sell the land unencumbered.

The Homeowners' primary defense to the foreclosure is based on the "clean hands" doctrine.

> The clean hands doctrine is based upon a maxim of equity that one who seeks equity must do so with clean hands. It provides in substance that no person can obtain affirmative relief in equity with respect to a transaction in which the person has been guilty of inequitable conduct. The clean hands maxim is not a binding rule, but is to be applied in the sound discretion of the court.

*T.S.I. Holdings, Inc. v. Jenkins*, 260 Kan. 703, 720, 924 P.2d 1239 (1996) (citation omitted). A mortgage foreclosure action is equitable in nature. *See Bank of Whitewater v. Decker Invs.*, 238 Kan. 308, 314, 710 P.2d 1258 (1985). The Homeowners thus argue that Holdings's own inequitable conduct should bar foreclosure and convince the court to give their interest priority. *See Wichita Fed. Sav. & Loan Ass'n v. Jones*, 155 Kan.

821, 130 P.2d 556 (1942) (affirming order in foreclosure action that gave after-acquired liens equal priority with mortgage on basis of equitable estoppel). Holdings does not contend that the clean hands doctrine may not serve as an equitable defense to foreclosure, but it disputes that its hands were unclean.

■ The Homeowners emphasize Holdings's dual role as joint venturer and mortgagee. Holdings's dual status does not by itself create an inference of inequitable conduct by Holdings. That status does, however, support other inferences of inequitable conduct that the court may properly draw from the record in this case viewed in the light most favorable to the Homeowners.

The Homeowners refer the court to its memorandum and order of February 26, 1996. *See Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 918 F.Supp. 343 (D.Kan.1996). In that opinion, the court denied Holdings's motion for summary judgment on its foreclosure claim. *Id.* In opposition to that motion, OCV and WHJV argued that Holdings's inequitable conduct caused WHJV's default. *Id.* at 346–47. The court described the evidence offered by OCV and WHJV in support of their contention:

> The record includes evidence, in the form of an affidavit, that the timely development of the golf course was an integral part of the development and to the generation of sufficient lot sales and cash flow. Mr. Walter Rist [OCV's vice-president], the affiant, declares that after WHJV bought out the prior golf course developer in early 1993, Holdings promised to pay the golf course contractor for services rendered up to that time. According to Mr. Rist, Holdings failed to make such payment and, as a result, a lien was filed against the property, which caused substantially all development work on the project to cease. Holdings also, continues Mr. Rist, failed to take any action to assist in hiring a new golf course developer and ignored alternative golf course financing plans proposed by OCV. Mr. Rist maintains that Holdings's inaction prevented WHJV from meeting its cash flow projections and caused its cessation of payments.

*Id.* at 348–49. The court noted that a breach by Holdings of the implied covenant of good faith and fair dealing would discharge WHJV's obligations under the loan, and ruled as follows:

> The court concludes that Mr. Rist's affidavit raises the inference that Holdings's inaction was designed to and did prevent WHJV from performing its loan payment obligations. As a result, material questions of fact exist regarding whether or not WHJV was obligated to continue making payments. These circumstances render summary judgment inappropriate.

*Id.* at 349. The court also ruled that a material question of fact remained regarding whether a breach by Holdings of its fiduciary duty to OCV and WHJV excused performance under the loan agreement. *Id.* at 349–50. The court stated:

> When viewed in the light most favorable to WHJV and OCV, Mr. Rist's affidavit raises the inference that Holdings breached its fiduciary duty. If Holdings acted, or refused to act, with the purpose of driving WHJV into default, perhaps to obtain sole ownership of the real estate in the process, which inferences are drawable on this summary judgment record, then Holdings ... breached its fiduciary duty.

*Id.* at 349. The court concluded by noting that Holdings's dual status provided a possible vehicle for inequitable conduct:

> The existence of the fiduciary duty and the inference that it has been breached stem from the specific circumstances of this case. The fiduciary duty arises from Holdings's status as a partner/joint venturer. At the very same time, Holdings is also a lender dealing with the very entity it partially comprises, possessing potentially conflicting interests in its dual roles.

*Id.* at 350.

The same inferences of inequitable conduct that precluded summary judgment in favor of Holdings sixteen months ago also make summary judgment inappropriate here. In the prior order, the court considered Holdings's conduct in relation to its obligations to WHJV and OCV. Although Holdings may not have similar contractual or fiduciary obligations to the Homeowners, nonetheless, if

Holdings did in fact improperly engineer a default of the loan in order to take over the project—which inference was drawn before and remains drawable now—and Holdings were permitted to foreclose the property unencumbered, then the Homeowners would be adversely affected. The Homeowners are thus entitled to use such conduct as the basis for its equitable defense.

Because a question of fact remains regarding whether Holdings engaged in such conduct, summary judgment is not appropriate in favor of either party. The Homeowners may attempt to prove at trial that Holdings manufactured the default for an improper purpose and that equity therefore demands that the priority of their liens be recognized. If, however, the Homeowners are not able to establish such machinations, Holdings would prevail; as stated above, Holdings's dual status is not enough in itself to constitute unclean hands, and the Homeowners would be subject to the mortgage, the recording of which gave notice of Holdings's interest.

 Holdings is entitled to partial summary judgment with respect to any equitable defense by the Homeowners based on alleged representations by Holdings concerning the development of a golf course. The Homeowners assert that Holdings is equitably estopped from foreclosing interests based on such representations.

> Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.

*United Am. State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 527, 561 P.2d 792 (1977). The Homeowners also rely on the representations as a basis for relief under the clean hands doctrine.

 The Homeowners' evidence in opposition to summary judgment, however, is not sufficient with respect to this defense. First, the Homeowners have not provided a basis by which to charge Holdings with the representations cited by the Homeowners. Statements in the Declaration, Restriction, and other documents, as well as alleged statements made directly to the Homeowners, were made by WHJV or its agents. The Homeowners attempt to connect those statements to Holdings by asserting that WHJV was acting as Holdings's agent. The Homeowners have not provided any authority, however, to support the proposition that a partnership acts as the agent of its partners. To the contrary, the Kansas Uniform Partnership Act, under which WHJV was formed, provides that each *partner* is an agent of the *partnership*. K.S.A. § 56–309(a). As one treatise explains, this provision furthers the entity view of partnerships and so rejects the old idea of a partnership as a reciprocal agency relationship. *See* Harold G. Reuschlein & William A. Gregory, *The Law of Agency and Partnership* 268–69 (2d ed.1990).

Nor have the Homeowners provided evidence that Holdings somehow adopted the representations. In their statement of facts, the Homeowners state that Holdings relied on OCV to prepare and file the Declaration, that Holdings was advised of the Declaration's preparation and filing, and that Holdings had the power to review and change and Declaration. In support of those statements, the Homeowners cite deposition testimony by Edward Williams, an officer and director of Holdings. That testimony, however, does not in fact support those statements, which the court must therefore disregard. Mr. Williams testified that a declaration of covenants is the type of document that the managing venturer would usually be responsible for. He also testified that he did not recall viewing or discussing the Woodland Hills Declaration specifically. Mr. Williams did not state or imply that Holdings had approved of the Declaration or agreed to subordinate its mortgage to interests created therein. Accordingly, the Homeowners have

not preserved for trial any defense based on these representations.[1]

The Homeowners also point to language in the Loan and Security Agreement between Holdings and WHJV in support of their equitable defense. The provision in question provides:

> The parties acknowledge that it is mutually contemplated that a golf course will be developed as part of or in connection with the Project. The location, design, developer, owner, operator or manager and financing for such golf course and the form and content of all agreements pertaining to the design, development, construction, financing, ownership, operation and management of such golf course shall be subject to Lender's approval in its sole and absolute discretion. Upon Lender's approval of all of the foregoing, Lender agrees, if required by any third party in connection with the development of such golf course, to release the portion of the Land required for the construction of such golf course from the liens of the Mortgage and all other Loan Documents, whether or not Lender receives any monetary consideration for such releases.

The final sentence from this excerpt provides for Holdings to release its lien only if required to do so in the construction of the golf course. That condition has not been met here; therefore, Holdings's failure to release its mortgage pursuant to this provision does not constitute evidence of inequitable conduct. Partial summary judgment in favor of Holdings on this issue is appropriate, and the Homeowners may not rely on this provision in pursuing its equitable defense at trial.

The Homeowners also argue that Holdings is contractually bound by the Declaration and Restriction, to which the Home-owners contend they are third-party beneficiaries. The court grants partial summary judgment to Holdings on this theory as well. First, Holdings was not a party to those documents, and the Homeowners have not provided any basis for binding Holdings to them contractually. As discussed above, Holdings's role as a partner does not make it a principal of the partnership. Second, the Homeowners have not cited, nor has the court found, any authority supporting the proposition that breach of contract may serve as a defense to foreclosure under Kansas law.

In summary, then, a genuine issue of fact remains regarding whether Holdings improperly engineered WHJV's default in the manner and for the purpose discussed in the court's prior opinion, and the Homeowners may offer evidence on that issue at trial to support its assertion that Holdings's unclean hands bar the equitable relief it seeks. The parties' motions for summary judgment are denied in that respect. The Homeowners may not offer evidence at trial in support of any other basis for an equitable defense because they have not presented evidence in support thereof sufficient to survive summary judgment. With respect to such bases and any other possible defenses, the court grants Holdings partial summary judgment and denies the Homeowners' motion for summary judgment.[2]

Finally, the Homeowners argue that their individual mortgagees are necessary parties who must be joined to the action pursuant to Fed.R.Civ.P. 19(a). The rule provides:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence

---

1. The Homeowners note that the state court has denied Holdings summary judgment on the Homeowners' fraud claims, and they have attached a proposed journal entry from the state court litigation as evidence of that fact. The exhibit is not a final order from that court, however, and Holdings's motion to strike the exhibit is therefore granted. Moreover, the rulings by the state court are not relevant to this court's determination whether questions of fact remain regarding the Homeowners' equitable defenses. The court has not attempted to decide whether

Holdings would be liable to the Homeowners on any contract or tort theory, and it does not intend its conclusions to have preclusive effect in the state court proceedings.

2. The Homeowners' briefs also refer to other equitable defenses such as waiver and laches. The Homeowners have not offered any argument in favor of the application of those other defenses, however, which are therefore deemed waived.

complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

*Id.*

 The court concludes that the mortgagees need not be joined under this rule. First, complete relief can be accorded those already parties to this foreclosure action in the absence of the mortgagees because the mortgagees do not hold a legal interest in the property subject to the foreclosure. The interest claimed by the Homeowners in that property arises from covenants that are intended to benefit the residents of the development, but, by its terms, the Declaration inures to the benefit of a lot mortgagee only upon foreclosure of the lot. Accordingly, because all parties with a recorded legal interest in the subject property have been joined to the action, complete relief may be accorded with respect to that property. Moreover, there is no risk of multiple recovery here.

The Homeowners argue nonetheless that the mortgagees have an interest in the subject property because of their interest in the Homeowners' property, and that the mortgagees ability to protect that interest would be impaired in their absence. This type of collateral concern, however, is not an "interest relating to the subject of the action" under rule 19(a)(2). A leading commentator describes the required interest as follows:

> This interest must be "legally protected, not merely a financial interest or interest of convenience." The absentee must have a direct stake in the pending litigation; an interest in related subject matter is not sufficient to be defined as a necessary party.

4 James W. Moore, *Federal Practice* § 19.03[3][b] (3d ed.1997) (footnote omitted) (quoting *Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1043 (9th Cir.1983)). The mortgagees certainly have a legal interest in the Homeowners' lots, and they may have a financial concern in this litigation to the extent it bears on the value of the land subject to their mortgages. Such concern, however, is not sufficient to give rise to an "interest" in the subject property and make the mortgagees necessary parties.[3]

Because no operative scheduling order is now in place, the court will conduct a telephone conference to discuss scheduling matters on Friday, June 20, 1997, at 2:30 p.m.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Holdings's motion for summary judgment (Doc. 577) is granted in part and denied in part, in accordance with this opinion.

**IT IS FURTHER ORDERED THAT** the Homeowners' motion for summary judgment (Doc. 579) is denied.

**IT IS FURTHER ORDERED THAT** Holdings's motion to strike (Doc. 591) is granted.

**IT IS SO ORDERED.**

---

**3.** The Homeowners cite *Board of Managers of Charles House Condominium v. Infinity Corporation,* 825 F.Supp. 597 (S.D.N.Y.1993) in support of their argument under rule 19(a). In that case, the mortgagee had to be joined because it held an interest in the very property at issue in the case. *Id.* Here, the mortgagees do not claim an interest in the property sought to be foreclosed.