NATIONAL MINORITY SUPPLIER DEVELOPMENT COUNCIL BUSINESS CONSORTIUM FUND, INC., Plaintiff,

v.

THE FIRST NATIONAL BANK OF OLATHE, Defendant.

No. 98–2505–JWL.

United States District Court, D. Kansas.

July 30, 1999.

William F. High, James D. Griffin, Blackwell Sanders Peper Martin LLP, Overland Park, KS, for National Minority Supplier Development Council Business Consortium Fund, Inc., plaintiffs.

Christopher B. Bacon, Lowe, Farmer, Bacon & Roe, Olathe, KS, for First National Bank of Olathe, the, defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This is a contract dispute related to the proper allocation of funds collected from a third party after it defaulted on certain loans. Now before the court are two motions: plaintiff's unopposed motion for partial summary judgment (Doc. 28), and defendant's motion for partial summary judgment (Doc. 18). Plaintiff's motion is granted because it is unopposed. For the reasons set forth below, defendant's motion is denied.

### I. Background

The material facts underlying defendant's motion are not in dispute. This case concerns the proper construction of a loan participation agreement between defendant First National Bank of Olathe ("Bank") and plaintiff National Minority Supplier Development Council Business Consortium Fund ("BCF"). Under the agreement, Bank loaned Hybrids International, Ltd. ("Hybrids") $375,000. BCF purchased a 100 percent participation in the loan, meaning that BCF funded the loan and had the right to receive payments under the loan. Bank and BCF agreed that Bank would administer the loan pursuant to the terms of the written loan participation agreement.

Bank also had two nonparticipating loans with Hybrids. These loans were made prior to the participating loan. Pursuant to these two loans, Bank held a priority security interest in all of Hybrids' accounts receivable, equipment, and inventory, among other collateral. In connection with the participating loan agreement, Bank purported to subordinate its priority in the inventory to BCF, but retained its priority in the remaining collateral.

Hybrids defaulted on all three loans on July 31, 1997. According to BCF, Bank focused its collection efforts on Hybrids' accounts receivable and equipment, collateral in which Bank claims a first priority security interest, and delayed collection efforts on Hybrids' inventory, collateral in which BCF claims a first priority security interest. Bank entered a lock box arrangement with Hybrids to collect the accounts receivable. Bank applied most of the collected funds to the nonparticipating loans and they are now paid in full. The participating loan continues to have a substantial outstanding balance.

BCF contends that the loan participation agreement required the Bank to allocate the accounts receivable proceeds to all three loans in proportion to the amounts outstanding on each loan. Bank seeks partial summary judgment, claiming

that the loan participation agreement unambiguously did not require it to so allocate. The court denies Bank's motion.

## II. Discussion

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

 In construing a contract under Kansas contract law, which the parties agree governs this case, "the intent of the parties is the primary question." *Slawson Exploration Co. v. Vintage Petroleum, Inc.*, 78 F.3d 1479, 1481 (10th Cir.1996) (citing *Akandas, Inc. v. Klippel*, 250 Kan. 458, 827 P.2d 37 (1992)). "Unless a written instrument is ambiguous or vague in its terms, that intention must be determined from the instrument as a whole or, as is often stated, from its 'four corners,' which simply means that all of the language used anywhere in the instrument should be taken into consideration and construed in harmony with other provisions of the contract." *Id.* "The initial determination of whether a contract provision is ambiguous is a matter of law." *City of Wichita v. Southwestern Bell Telephone Co.*, 24 F.3d 1282, 1287 (10th Cir. 1994) (citing *Simon v. National Farmers Org.*, 250 Kan. 676, 829 P.2d 884 (1992)).

To be ambiguous, the contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from the natural and reasonable interpretation of its language. An ambiguity does not appear until application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more meanings is the proper meaning.

*Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 918 F.Supp. 343, 347 (D.Kan.1996) (citing *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659, 810 P.2d 283 (1991)).

 The court denies defendant's motion for summary judgment because Bank has failed to sustain its burden to show it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The terms of the participation agreement do not unambiguously support a reading that allows Bank to retain accounts receivable proceeds without apportionment. To the contrary, although the court does not go so far as to grant summary judgment to plaintiff on this issue,[1] the participation agreement appears unambiguously to require apportionment. The participation agreement provides as follows:

8(e): To the extent that any payments by the Borrower [Hybrids] to the Bank are insufficient to pay in full the amounts then due and owing under the Loan and any other loan, or in the event of the occurrence of an Event of Default, whereby the Bank takes any action to collect the amounts due and owing under the Loan and/or any other loan, or if the Bank enforces its rights with respect to the Collateral which is security for the Loan and any other loan, then, notwithstanding any priority created by filing U.C.C.–1 Financing Statements, it is expressly understood as follows:

(1) The amounts received by the Bank, which may constitute payment of either the Loan or any other loan, no matter how designated by the Borrower, shall be apportioned between the Loan and such other loans in proportion to the respective balances then due and owing under each loan;

(2) The occurrence of an Event of Default, under either the Loan or any other loan, and the decision that the balance owed under one shall be accelerated, or that said loan shall be collected, or that the rights with respect to the Collateral shall be exercised, then in any such event, the same action shall be taken by the bank with respect to each such loan, and the

---

1. Plaintiff did not seek summary judgment on this issue.

proceeds of collection, including the amounts realized on foreclosure of the Collateral, shall be first allocated between the Loan and any other loan, based upon the outstanding balances owed under each such loan, and, thereafter, with respect to the amount so allocated to the Loan, shall be further allocated among the Bank and the BCF in accordance with their respective Participation Interests.

5(a): The Bank shall hold the Loan, the Loan Documents and the Collateral, as defined in the Section C(5) on page 18 hereof, any other security therefor ... for the benefit of the Bank and the BCF under this agreement.

13(c)(5) [at page 17]: *Collateral/Security: All inventory of the borrower and a junior lien on accounts receivable, furniture, fixtures, equipment and general intangibles.

*not withstanding [sic] anything contained herein to the contrary, bank agrees to subordinate its existing lien on inventory to that of BCF.

Bank apparently argues that apportionment was not required because its first priority lien on Hybrids' accounts receivable was not "Collateral" for the participating loan; only the "junior lien on accounts receivable" was collateral for the participating loan. That is, Bank apparently argues that its actions do not fall under the "if the Bank enforces its rights with respect to the Collateral which is security for the Loan and any other loan" apportionment triggering contingency because although the Bank's senior lien on accounts receivable was "Collateral which is security for ... any other loan," it was not also "Collateral which is security for the Loan." Accordingly, Bank argues, it was not required to apportion the accounts receivable proceeds. In contrast, BCF simply assumes that one or more of the three apportionment triggering contingencies occurred and argues that, therefore, the plain language of section 8(e)(1) requires apportionment.

The court denies summary judgment because it believes that if the participation agreement allows Bank to avoid apportionment, it does so only ambiguously. It is entirely reasonable to read the contract as requiring apportionment of "the proceeds of collection," *see* section 8(e)(2), any time "in the event of an occurrence of an Event of Default" the Bank "takes any action to collect the amounts due and owing under the Loan and/or any other loan." Bank completely fails to explain how entering a lockbox arrangement with Hybrids to collect Hybrids' accounts receivable is not "any action to collect the amounts due and owing." [2] Moreover, in light of the overall tenor of the agreement as one where Bank was in effect acting as BCF's trustee,[3] Bank's argument that its actions in collecting the accounts receivable through a lockbox arrangement were not "enforc[ing] its rights with respect to the Collateral which

**2.** Any attempt to argue that the "Bank enforces its rights with respect to the Collateral" contingency clause is mutually exclusive with the "any action to collect the amounts due and owing" contingency clause would be utterly without merit. *See* section 12(e) ("The word 'or' in this Agreement is used in the inclusive sense.").

**3.** *See* section 5(a) ("The Bank shall hold the Loan, the Loan Documents and the Collateral, as defined in section C(5) ... for the benefit of the Bank and the BCF under this agreement."); section 7(II) ("Upon the occurrence of any Event of Default under the Loan Documents, the Bank shall exercise the same due diligence in its collection efforts with respect to the Loan as the Bank would exercise in collecting loans for its own account."); section 8(a) ("The Bank is to act as trustee of the Loan Documents on behalf of the BCF and as the agent in collection ... of the BCF in the Loan. The rights and benefits of the Bank under the Loan Documents shall inure to the benefit of the BCF."); section 8(c) ("In performing its services under this Agreement, the Bank will use the same degree of care that the Bank uses in servicing and administering loans for its own account."); section 8(g) ("The same care has been and will be exercised by the Bank in handling the Loan and any Collateral and security as the Bank exercise [sic] with respect to loans in which no participation is sold.").

is security for the Loan and any other loan" have no merit. Bank points the court's attention to the word "and" and argues that the junior lien on accounts receivable was not "Collateral which is security for the Loan *and* any other loan" because the junior lien was collateral only for the participating loan and the Bank's senior lien was collateral only for the non-participating loan. The contract does not unambiguously support such a construction because to so read the contract would be to give no effect to the quoted contingency clause; the parties simply did not refer in the four corners of the agreement to any such "Collateral" which was security both for the Loan and any other loan.[4]

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for partial summary judgment (Doc. 18) is denied.

**IT IS FURTHER ORDERED** that plaintiff's unopposed motion for partial summary judgment (Doc. 28) is granted. Participation Loan No. 1007156 was in default as of July 31, 1997.

**IT IS SO ORDERED.**

---

4. A much more plausible reading of the agreement would be such that the phrase "Collateral which is security for the Loan and any other loan" refers to Hybrids' property subject to any jointly held security interest regardless of priority. *See* K.S.A. § 84-9-105(c) (" 'Collateral' means the property subject to a security interest[.]").